**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**ACCIDENT INSURANCE COMPANY**                                      **PLAINTIFF**

**VERSUS**                                  **CIVIL ACTION NO. 2:11cv33KS-MTP**

**CLASSIC BUILDING DESIGN, LLC, et al.**                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Accident Insurance Company's ("AIC") Motion for Order Declaring Rights and for Clarification ("Motion for Declaration") [148]; Robert D. Brewer and Classic Building Design, LLC's ("Classic") Motion for Summary Judgment on Crossclaims [149] and Motion *in Limine* to Exclude Expert Testimony of James R. Neal on Issues of Breach and Causation ("Motion *in Limine*") [151]; and Martha Pace's Motion to Strike AIC's Rebuttal and Amended and Revised Rebuttal ("Motion to Strike AIC's Rebuttal") [168] and Motion to Strike Supplement to Motion for Summary Judgment and Rebuttal Memorandum Brief Filed by Brewer and Classic ("Motion to Strike Supplement") [169].  Having considered the submissions of the parties, the record and the applicable law, the Court finds that:  1) Brewer and Classic's Motion *in Limine* [151] should be granted in part and denied in part; 2) Martha Pace's Motion to Strike Supplement [169] should be denied; 3) Brewer and Classic's Motion for Summary Judgment on Crossclaims [149] should be granted; 4) Martha Pace's Motion to Strike AIC's Rebuttal [168] should be denied as moot; and 5) AIC's Motion for Declaration [148] should be denied as moot.

## FACTUAL AND PROCEDURAL HISTORY

Martha Pace's residence was constructed by Classic in 2005.  On or about

February 26, 2010, Pace was struck in the head by a light fixture that fell from her bathroom ceiling.  On March 9, 2010, Pace's attorney sent Robert D. Brewer, Classic's sole member, correspondence advising of the incident and alleging that the light fixture was not properly installed when the house was built.  (*See* March 9, 2010 Letter [1-2].)  The letter from Pace's counsel requested that Brewer's liability insurer contact him within ten (10) days in order to avoid litigation.

Classic subsequently demanded coverage from AIC regarding Pace's claim under a commercial general liability insurance policy with effective dates being March 13, 2009, through March 13, 2010 (the "Policy").  On February 16, 2011, AIC forwarded a reservation of rights letter to Classic.  (*See* February 16, 2011 Letter [8-2].)

On February 17, 2011, AIC filed its Complaint for Declaratory Judgment [1], requesting, *inter alia*, an order declaring that the Policy does not provide coverage for Pace's claims against Classic.  The Complaint named Classic and Pace as Defendants.  Jurisdiction was asserted on the basis of diversity of citizenship under 28 U.S.C. § 1332.

On March 18, 2011, Classic filed its Answer and Defenses to Complaint and Counterclaim [5].  Through its counterclaim, Classic requested a declaration that AIC has a duty to defend and indemnify Classic with respect to Pace's claims.  Classic also sought compensatory and punitive damages as a result of AIC's alleged bad faith in including a Contractors Special Condition endorsement in the Policy, and due to AIC refusing to defend and indemnify Classic.  The Court subsequently dismissed Classic's request for punitive damages without prejudice.  (*See* Order [25] at p. 9.)

On March 22, 2011, Martha Pace filed her Answer, Counter-Complaint and Cross-Complaint [6].  Pace alleged that she suffered personal injury as a result of the light

2

fixture falling from her bathroom ceiling and striking her head.  She further alleged that Classic negligently and improperly installed the light fixture, and that Classic was negligent in screening, training and supervising workers on the job site.  (*See* Answer [6] at p. 9.)

On June 9, 2011, the Court, *sua sponte*, ordered any party seeking to address the issue of possible bifurcation between the liability issues on Pace's crossclaim and the coverage issues under the Policy to file a memorandum of law.  (*See* Order [38].)  Also on June 9, Classic filed a Third-Party Complaint [39] against Danny Wilks and Danny Wilks Insurance Agency, LLC (hereinafter collectively referred to as "Wilks").  Classic stated that the Policy was procured through Wilks.  (*See* Third-Party Complaint [39] at ¶ 7.)  Classic alleged that Wilks was negligent in the procurement of the Policy since AIC contended the Policy does not cover the claims for which Classic specifically sought coverage.  (*See* Third-Party Complaint [39] at ¶ 10.)

On July 18, 2011, Pace filed a Third Party Complaint [54] against Robert D. Brewer.  Pace alleged that the light fixture was installed by Brewer "individually, and in his capacity as owner of Classic . . . ."  (*See* Third Party Complaint [54] at ¶ 7.)  Pace further made the same claims against Brewer that she had previously made against Classic.  (*Compare* Answer [6] at p. 9, *with* Third Party Complaint [54] at ¶ 8.)

On August 5, 2011, Brewer and Classic moved to stay proceedings on the coverage issues pending resolution of Pace's liability claims against them.  (*See* Motion to Stay Discovery and Claims of AIC for Declaratory Relief [63].)  AIC joined in the motion.  (*See* Joinder [64].)  On September 7, 2011, the Court ruled on the Motion to Stay [63] and the issue of bifurcation.  (*See* Order [77]).  The Court held that the insurance coverage

claims, included Classic's third-party claims against Wilks, would be bifurcated from Pace's crossclaims for purposes of trial.  Further, Pace's crossclaims would be tried prior to the coverage action.  Discovery on all issues and claims would remain consolidated and proceed on the same schedule.

On December 12, 2011, following a status conference with counsel for the parties, the Court reset several case management deadlines relevant to the subject motions. (*See* Order Resetting Case Deadlines [96]) (Martha Pace's expert designation deadline on crossclaims reset to March 1, 2012; Classic and Brewer's expert designation deadline regarding Pace's crossclaims reset to April 2, 2012; discovery deadline for all claims and defenses reset to June 1, 2012; and deadline for motions regarding liability on crossclaims reset to June 15, 2012).[1]  On March 1, 2012, Pace timely served her Designation of Experts [103], which included a signed report from James R. Neal, an electrical inspector employed by the City of Hattiesburg.  (*See* Inspection Report [103-1].) On April 2, 2012, Classic and Brewer timely designated their expert witnesses.  (*See* Notice of Service [110]; Designation of Experts [164-4].)  On April 10, 2012, Mr. Neal was deposed and during that deposition he indicated, *inter alia*, that a portion of his Inspection Report no longer reflected his opinion and that the Report should have been changed. (*See* Neal Depo. [151-8] at 78:10-15, 81:15-19.)  On July 2, 2012, Pace served Mr. Neal's Supplemental Report.  (*See* Supplemental Report [147-1].)

On July 3, 2012, AIC filed its Motion for Declaration [148].  AIC contends that an issue central to the coverage and liability determinations is whether Mike Eubanks was

---

[1] The deadline for motions was subsequently extended to July 6, 2012, pursuant to an unopposed motion filed by Classic and Brewer.

working as an independent contractor or an employee of Classic at the time he installed the subject light fixture in Pace's residence.  (*See* Motion for Declaration [148] at ¶ 2.) AIC requests that the Court declare that it will not be collaterally estopped from litigating the issue of Eubanks's employment status during the coverage phase of the action. Alternatively, AIC seeks an order from the Court allowing it to participate in the trial of Pace's crossclaims for the limited purpose of advancing its position that Eubanks was an independent contractor.

On July 6, 2012, Classic and Brewer filed their Motion *in Limine* [151] and Motion for Summary Judgment [149].  In their Motion *in Limine*, Classic and Brewer request that the Court strike as untimely James R. Neal's "new" opinions given at his deposition and in his Supplemental Report.  Classic and Brewer further contend that Neal's initial opinion as to what caused the light fixture to fall should be excluded under Federal Rule of Evidence 702 because it is unreliable.  The Motion for Summary Judgment [149] largely argues that without Neal's opinions, Martha Pace has no evidence to support the breach and causation elements of her negligence claim.

On August 6, 2012, Classic and Brewer filed a Supplement [164] to their Motion for Summary Judgment and a Rebuttal Memorandum [165] in support of summary judgment. These filings primarily address Pace's reliance on the doctrine of *res ipsa loquitur* in opposition to summary judgment.  Pace's Motion to Strike Supplement [169] contends that Classic and Brewer's aforementioned filings improperly raise new arguments and facts in support of summary judgment.

Also on August 6, 2012, AIC filed a Rebuttal [166] and an Amended and Revised Rebuttal [167] to Pace's Response to Classic's Motion for Summary Judgment.  Through

these filings, AIC requests that the Court enter summary judgment in favor of Classic and Brewer on the basis that Mike Eubanks (the individual that AIC alleges installed the subject light fixture) was an independent contractor, as opposed to an employee of Brewer or Classic.  Pace's Motion to Strike AIC's Rebuttal [168] argues that AIC's filings should be rejected because they are untimely and because neither she nor Classic has requested that the Court determine Eubanks's employment status as a matter of law.

## DISCUSSION

I.    **Classic and Brewer's Motion *in Limine* [151]**

A.    **Whether the Breach and Causation Opinions Expressed by James R. Neal at His Deposition and in His Supplemental Report Should Be Excluded Due to Untimeliness**

Under Rule 26 of the Federal Rules of Civil Procedure, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. P. 26(a)(2).  As to a retained expert witness, a party's disclosure must include a written report prepared by the witness containing, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them; [and] the facts or data considered by the witness in forming them . . . ."  Fed. R. Civ. P. 26(a)(2)(B).  The purpose behind the expert report requirement "is to avoid the disclosure of 'sketchy and vague' expert information, as was the practice under the former rule."  *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) (citing Fed. R. Civ. P. 26 advisory committee's note).

Expert disclosures are to be made in the sequence ordered by the court and are to be supplemented in accordance with Rule 26(e).  *See* Fed. R. Civ. P. 26(a)(2)(D)-(E); Fed.

R. Civ. P. 26(e)(1)(A) (Timely supplementation is required if a party learns that a disclosure is in some material respect "incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ."). Additions or changes to expert witness information must be disclosed by the time a party's pretrial disclosures are due under Rule 26(a)(3). *See* Fed. R. Civ. P. 26(e)(2). "Unless the court orders otherwise," pretrial disclosures are due 30 days before trial. Fed. R. Civ. P. 26(a)(3)(B). The Court has ordered otherwise via Local Rule 26(a)(5). "A party is under a duty to supplement disclosures at appropriate intervals under Fed.R.Civ.P. 26(e) and in no event later than the discovery deadline established by the case management order." L.U.Civ.R. 26(a)(5).

Classic and Brewer (hereinafter sometimes collectively referred to as "Classic") contend that James R. Neal presented "new" and "untimely" opinions at his deposition and in his Supplemental Report [147-1]. Classic further contends that the "new" opinions should be excluded as a discovery sanction under Federal Rule of Civil Procedure 37. Pace argues that the subject opinions merely "supplemented" Neal's original Inspection Report [103-1]. The last day for the parties to supplement expert disclosures was June 1, 2012, the discovery deadline. *See* L.U.Civ.R. 26(a)(5). Neal's Supplemental Report [147-1] was filed on July 2, 2012. Therefore, the Supplemental Report was untimely whether or not it contained new opinions and the Court will determine whether it should be excluded under Rule 37. *See Elliot v. Amadas Indus., Inc.*, 796 F. Supp. 2d 796, 803 (S.D. Miss. 2011). Neal's deposition was taken on April 10, 2012, before the discovery deadline, but after Pace's expert designation deadline of March 1. Therefore, the timeliness of the disclosure of Neal's deposition opinions turns on whether the opinions

7

are considered to be "new" or "supplemental" to his Inspection Report [103-1].

An examination of the potential differences between Neal's Inspection Report and the opinions expressed at his deposition requires a general understanding of the components of the subject light fixture, the terminology the parties assign to those components, and the manner in which the light fixture was secured to the ceiling of Pace's residence. The light fixture consists of a circular base mounted to the ceiling with a hemisphere-shaped glass globe covering a light bulb.[2] First, a metal mounting strap is attached to an electrical box in the ceiling with screws. Then, the circular light fixture base attaches to the metal mounting strap with screws. The fixture base includes the light bulb socket assembly. Next, a multi-piece hardware assembly is used to attach the hemisphere-shaped glass globe to the fixture base. The part of the hardware assembly on the attic side of the fixture base (hereinafter referred to as the "top assembly") consists of a short "all-thread barrel"[3] (sometimes referred to as a "short threaded pipe") secured to the attic side of the fixture base with a hex nut and a lock washer.[4] The short all-thread barrel extends through the ceiling and into a hole in the fixture base. The all-thread barrel then screws into a threaded "coupler" or "coupling" on the bottom of the base, which secures the top assembly to the fixture base. The part of the hardware assembly on the ceiling side of the fixture base (as opposed to the attic side) primarily consists of a "threaded pipe" several inches in length (sometimes referred to as a "long threaded pipe")

---

[2] A photograph of a similar light fixture is in the record. (*See* Doc. No. [151-2].)

[3] The short all-thread barrel is approximately one-half inch in length.

[4] Photographs of the top assembly are in the record. (*See* Doc. Nos. [151-3, 151-4].)

8

and the aforementioned coupler or coupling.[5]  The threaded pipe screws into the bottom

of the coupler and the glass globe is then pushed up and over the threaded pipe through

a hole in the bottom of the globe.  A "guarnicion" (small trim piece) and "finial" (ornamental

terminating piece) are then secured to the end of the threaded pipe protruding from the

bottom of the glass globe and hold the glass globe in place.

*The Inspection Report*

After setting forth his qualifications, Neal stated that he inspected the subject light

fixture at Pace's residence approximately two (2) years after it fell.  (*See* Inspection

Report [103-1] at p. 1.)  Parts from the light fixture that had fallen from the ceiling were in

a box which contained broken glass, washers, the threaded pipe, guarnicion and finial.

(*See* Inspection Report [103-1] at pp. 1-2.)  Pace told Neal that the mounting strap did not

fall.  (*See* Inspection Report [103-1] at p. 2.)  Neal was further advised that after the light

fixture fell, the home builder came to Pace's residence and installed another glass globe

that he took out of one of Pace's closets.  (*See* Inspection Report [103-1] at p. 2.)  After

describing the type of light fixture at issue in this case, Neal provided the following:

> It is obvious from the pieces of the light fixture in the box, that the part
> of the light fixture that fell did so because the threaded pipe came loose
> from the coupling. The coupling was still in the ceiling, but the threaded pipe
> fell along with the globe, guarnicion and finial. When the threaded pipe
> came loose from the coupling, the glass globe, the guarnicion and finial
> were all attached to the threaded pipe and came down with it. So the
> immediate cause of the fixture falling was that the threaded pipe came loose
> from the coupling.

(Inspection Report [103-1] at pp. 2-3.)  Neal further stated that he inspected the coupler

---

[5] An illustration of a similar light fixture with a coupling, threaded pipe and various
other components is in the record.  (*See* Doc. No. [151-5].)

and threaded pipe and could not find any defects, such as stripped threads, to explain

why the pipe came loose from the coupling.  Neal further opined:

> [I]f this light fixture had been properly installed it could not have fallen from the ceiling.  If the light fixture had been properly installed, the part that fell on Mrs. Pace could only be removed from the ceiling by someone intentionally unscrewing the threaded pipe from the coupler. There would not be any reason for a homeowner to unscrew the threaded pipe from the coupler, and Mr. and Mrs. Pace both stated that no one had touched that light fixture at all since they moved into the house.

(Inspection Report [103-1] at p. 3.)  Neal further stated:

> It is my opinion that the light fixture in the Pace water closet that fell from the ceiling on February 26, 2010 had not been properly installed, and that improper installation was the cause of the fixture falling from the ceiling. More specifically, it is my opinion that the threaded pipe had not been properly screwed into the coupler. The applicable industry standards require that any such mountings and installations be firmly secured, E3806.8.1, E3806.8.3, E3304.7, IRC 2006. In order to firmly secure the threaded pipe to the coupler in this light fixture, the pipe should have been wrench tightened. I could not find any markings indicating that the pipe and coupler had been wrench tightened. Also, even though the fittings should have been wrench tightened to be completely safe, it is my opinion that the fittings were not even hand tightened all the way. While hand tightening is not as good as wrench tightening, the fixture probably would not have fallen from the ceiling if it had even been hand tightened as much as possible.

(Inspection Report [103-1] at p. 4.)  Neal inspected another light fixture in Pace's

residence and found it to "be incredibly loose."  (Inspection Report [103-1] at p. 5.)  This

confirmed his opinion that the light fixtures in the house had been improperly installed and

secured.  (Inspection Report [103-1] at p. 5.)

### *James R. Neal's Deposition Testimony*

Classic contends that the following portions of Neal's deposition testimony exhibit

new and untimely expert opinions:

Q.    Yeah.  What came aloose from what?

10

A.      Well, I learned something, that the - - what they call that - - the hex nut that came apart, the thing that was loose that you got to make sure is tight before you put anything in it, had fell, not what she had gave me.

(Neal Depo. [151-8] at 79:8-13.)

Q.      Okay.  So, Mr. Neal, which part came loose from which part?  Tell me which parts came loose from each other that caused the globe to fall.

A.      Well, we're going to assume that it came loose from - -  the coupling came loose.  The coupling came loose.

Q.      Okay.  And what's the coupling attached to?

A.      Fixture.

(Neal Depo. [151-8] at 82:10-18.)

Q.      You don't know whether the coupling on the light fixture that was installed in Ms. Pace's bathroom that she says fell - - the globe fell on her, you don't know if that coupling was attached at the factory or if it was installed by the person installing the light fixture, do you?

A.      You better make sure it's tight when they do it.

Q.      All right.  So you are taking the position that an installer is to check all factory attachments?

A.      Of course.

(Neal Depo. [151-8] at 86:3-19.)

Variances between Neal's Inspection Report and his deposition testimony appear to be due to the light fixture components he inspected either not being the same, or all of the components that fell from Pace's ceiling.  Shortly after the subject incident, Martha Pace's husband and son placed hardware from the fallen fixture into a box.  (*See* Melvin Pace Depo. [151-6] at 36:6-19; Farris Pace Depo. [151-7] at 32:8-12; Martha Pace Depo. [151-9] at 118:17-20.)  A picture of that box taken by Pace's son either the day of the accident or the next day appears to show the long threaded pipe still attached to the

11

coupler.  (*See* Farris Pace Depo. [151-7] at 33:19-25, 42:5-15, 43:21-44:12; Martha Pace Depo. [151-9] at 117:13-118:23, and Exhibit 7 to Depo.)  During his inspection nearly two years later, Neal found the long threaded pipe in the box, but the coupler still in the light fixture in the ceiling. (*See* Inspection Report [103-1] at pp. 2-3.)  Neal did not view the picture taken by Pace's son before drafting his Inspection Report.  (*See* Neal Depo. [151-8] at 74:2-13.)  He did, however, view the picture before his deposition and acknowledged at the deposition that it was no longer his opinion that the threaded pipe came loose from the coupler, and that his Inspection Report should have been changed. (*See* Neal Depo. [151-8] at 78:1-15, 81:15-19.)  Further, Pace's attorney "stipulate[d] that the fixture came loose at the coupling instead of the threaded pipe coming loose from the coupling" in light of the aforementioned photograph.  (*See* Neal Depo. [151-8] at 81:3-12.)

Taking into account the forgoing circumstances, the Court concludes that the subject opinions expressed by Neal at his deposition were not supplemental within the meaning of Rule 26(e).  The thrust of Neal's Inspection Report is that the light fixture fell because the installer failed to adequately secure the long threaded pipe to the coupler. Neal effectively abandoned this theory at his deposition and offered various other hypotheses as to how or why the light fixture fell.  (*See* Neal Depo. [151-8] at 79:8-13, 82:10-18, 86:3-18.) (The hex nut came apart and fell; the coupling came loose from the fixture; the installer is to check all factory attachments.)  "Courts have made it clear that supplemental expert reports cannot be used to 'fix' problems in initial reports."  *Cooper Tire & Rubber Co. v. Farese*, No. 3:02cv210, 2008 WL 5104745, at *4 (N.D. Miss. Nov. 26, 2008) (citing *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997)) (other citations omitted); *see also United States ex rel. Gudur v. Deloitte*

12

*Consulting LLP*, No. H-00-1169, 2007 WL 4322433, at *5 (S.D. Tex. Mar. 5, 2007) ("supplemental report that effectively replaces an earlier report is not 'supplemental' within the meaning of Rule 26(a)") (citing *Brennan's, Inc. v. Dickie Brennan & Co., Inc.*, 376 F.3d 356, 375 (5th Cir. 2004)).

Moreover, Neal's deposition theories could have been offered by Pace's expert designation deadline of March 1, 2012, since the apparent need for them was the photograph taken by Pace's son in February of 2010.  "Courts have routinely rejected untimely 'supplemental' expert testimony where the opinions are based on information available prior to the missed deadline for service of initial disclosures."  *Buxton v. Lil' Drug Store Prods. Inc.*, No. 2:02cv178, 2007 WL 2254492, at *5 (S.D. Miss. Aug. 1, 2007), *aff'd*, 294 Fed. Appx. 92 (5th Cir. 2008) (citing *Sierra Club*, 73 F.3d at 571) (other citations omitted); *see also Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) (Rule 26(e) "does not cover failures of omission because the expert did an inadequate or incomplete preparation.").  Furthermore, expert opinions should be disclosed before, and not at expert depositions.  *See Booker v. Moore*, No. 5:08cv309, 2010 WL 2426013, at *2 (S.D. Miss. June 10, 2010) ("'The purpose of Rule 26(a)(2) is to provide notice to opposing counsel – before the deposition –  as to what the expert will testify . . . .'") (quoting *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008)).

Pursuant to the above-cited authorities, Neal's challenged deposition opinions were not timely disclosed and the Court will now determine whether they, along with the Supplemental Report [147-1], should be excluded under Rule 37.

District courts possess broad, considerable discretion in discovery matters.  *See Sierra Club*, 73 F.3d at 569.  In determining whether to exclude expert witness testimony,

that discretion is to be guided by the following four factors:  "(1) the importance of the witness's testimony; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to identify the witness."  *Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989) (citing *Murphy v. Magnolia Elec. Power Ass'n*, 639 F.2d 232, 235 (5th Cir. 1981)).  The Court will apply the preceding factors to Neal's challenged deposition testimony and Supplemental Report [147-1] separately since they were disclosed at different times.

### First Factor (Importance) – Deposition Testimony

Assuming *arguendo* that Neal's testimony is admissible, it is important to Pace's case.  Neal is Pace's only expert witness who is expected to testify that the subject light fixture was improperly installed and that such improper installation caused the light fixture to fall and strike Pace.  (*See* Pace's Designation of Experts [103].)  However, the importance of Neal's testimony only "underscores how critical it was" for the testimony to have been timely disclosed.  *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004).  Thus, this factor only slightly militates against exclusion.

### Second Factor (Prejudice) – Deposition Testimony

This factor weighs heavily against exclusion.  Neal was deposed on April 10, 2012, forty-nine (49) days before Classic's experts were deposed on May 29, and fifty-two (52) days before the deadline to submit supplemental expert disclosures on June 1.  Classic's experts had sufficient time prior to their depositions to consider any new opinions offered by Neal at his deposition.  Further, Classic had ample time before the discovery deadline to disclose any supplemental opinions from its experts resulting from Neal's deposition

14

testimony.  This is not a situation where late disclosure of expert testimony "disrupted the court's discovery schedule and the opponent's [trial] preparation."  *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

### Third Factor (Continuance) – Deposition Testimony

This factor also weighs against the exclusion of Neal's deposition opinions.  As noted in the preceding section, Classic had sufficient time to consider Neal's deposition testimony prior to its experts being deposed and prior to the deadline to supplement expert disclosures.  In the absence of any malady (prejudice), there is no need for a cure (continuance).

### Fourth Factor (Explanation) – Deposition Testimony

Pace has not offered a sufficient explanation for Neal's disclosure of new opinions at his deposition.  Pace contends that:  "All Mr. Neal did at his deposition was supplement his earlier report to take into account the photograph pointed out by Defendants' expert, which was relevant to the question of where the light separated."  (*See* Pace's Memo. in Opp. [160] at p. 11.)  This is a bit of an understatement.  The breach of the standard of care opinion in Neal's original Inspection Report centers upon the contention "that the threaded pipe had not been properly screwed into the coupler."  (Inspection Report [103-1] at p. 4.)  Neal essentially renounced this opinion at his deposition when he testified that it was no longer his opinion that the threaded pipe came loose from the coupler, and that his Inspection Report should have been changed.  (*See* Neal Depo. [151-8] at 78:1-15, 81:15-19.)  Further, the photograph "pointed out by Defendants' expert," causing this change in opinion was taken by Pace's son approximately two (2) years before Neal's deposition.  The failure of Pace's counsel to show Neal the photograph prior to Pace's

15

expert designation deadline does not justify the untimely disclosure of Neal's alternative theories as to how or why the light fixture fell.  *Cf. Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996) (no "plausible explanation" for failure to comply with deadline where expert's inability to meet the deadline was due in large part to counsel's failure to furnish necessary information).

In balancing the preceding factors, the Court finds that exclusion of Neal's challenged deposition opinions is not warranted.  Most importantly, Classic will not be prejudiced if Neal testifies at trial in accordance with the opinions since Classic was on notice of the opinions nearly two (2) months before the close of discovery.  *Cf. Martin v. Wal-Mart Stores, Inc.*, No. 2:10cv268, 2011 WL 6370107, at *3 (S.D. Miss. Dec. 19, 2011) (refusing to strike expert affidavit in the absence of prejudice to the moving party).  Thus, Classic's request to exclude Neal's deposition testimony will be denied.

<u>*First Factor (Importance) – Supplemental Report*</u>

This factor slightly militates against exclusion for the same reasons stated under the analysis of Neal's deposition testimony.

<u>*Second Factor (Prejudice) – Supplemental Report*</u>

Unlike Neal's deposition testimony, his Supplemental Report [147-1] was provided after Classic's experts were deposed and after the close of discovery.  Therefore, Classic did not have an opportunity to review the Supplemental Report and submit supplemental opinions from its experts before the discovery deadline.

Classic primarily objects to the following opinion in the Supplemental Report:

> Regardless of whether the light fixture in the Pace home came
> apart where the long threaded pipe screws into the coupler as
> I originally thought, or whether the coupler came loose from

16

> the short threaded pipe, or whether the short threaded pipe
> came loose from the hex nut, my opinion is the same, that the
> installer should have double checked all of those connections
> and made sure they were tight and secure prior to fastening
> the fixture to the ceiling.

(Supplemental Report [147-1] at pp. 2-3.)  Classic should not have been wholly surprised

by this opinion.  At deposition, Neal testified that the light fixture fell because the hex nut

came apart and/or because the coupling came loose from the fixture.  (Neal Depo. [151-8]

at 79:8-13, 82:10-18.)  Neal further testified that the installer is to check all factory

connections.  (Neal Depo. [151-8] at 86:16-19.)  Nonetheless, those deposition opinions

were themselves untimely and Classic would be prejudiced if its experts were not allowed

to address Neal's more cogent and refined opinion stated in his Supplemental Report.

*See Geiserman*, 893 F.2d at 791 ("Although Attorney might not suffer the degree of unfair

surprise associated with the last-second designation of an unscheduled witness, the trial

court has latitude to control discovery abuses and cure prejudice by excluding improperly

designated evidence.") (internal citation omitted); *accord Elliot*, 796 F. Supp. 2d at 804

(finding prejudice where defendants would be required to prepare supplemental expert

testimony to rebut plaintiffs' expert's late testimony).  The second "prejudice" factor

weighs in favor of excluding the Supplemental Report.

<u>Third Factor (Continuance) – Supplemental Report</u>

A continuance would likely cure any prejudice to Classic by allowing time for its

experts to prepare supplemental testimony in rebuttal to the opinions stated in Neal's

Supplemental Report.  On the other hand, a continuance would also result "in additional

delay and increase[] the expense of defending the lawsuit."  *Geiserman*, 893 F.2d at 792.

Further, "a continuance would not deter future dilatory behavior, nor serve to enforce local

17

rules or court imposed scheduling orders." *Id.* Therefore, the Court finds the third factor to weigh slightly in favor of excluding the Supplemental Report.

<u>Fourth Factor (Explanation) – Supplemental Report</u>

The first sentence of the Supplemental Report provides that it "is made to respond to the opinions expressed by the Defendants' expert witnesses in their deposition testimony." (Supplemental Report [147-1] at p. 1.)  Also, Pace argues that the Supplemental Report was "reasonably timely" since Defendants delayed in scheduling their experts' depositions and since the report was submitted only two (2) days after Pace's counsel received transcripts from the expert depositions. (*See* Pace Memo. in Opp. [160] at p. 8.)

Pace's explanation for the untimely submission of the Supplemental Report is not convincing.  The deposition testimony of Classic's experts referenced in the Supplemental Report on July 2, 2012,[6] is materially the same as the expert opinions disclosed in Classic's Designation of Experts [164-4] on April 2, 2012.[7]  Neal had

---

[6] The Supplemental Report references the following three points from Defendants' experts' depositions:  1) the "light fixture came apart where the short threaded pipe screws into a hex nut on the top side of the light fixture[;]" 2) the experts "claim that one of the photographs taken of the fallen part of the fixture shortly after the incident shows the top of the short threaded pipe sticking out of the coupler[;]" and 3) the experts "contend that the short threaded pipe and the nut that holds it in place are fastened together at the factory in China, and therefore it is not the installer's responsibility or fault if that connection is not tight or secure." (Supplemental Report [147-1] at p. 1.)

[7] "[I]t is clear to me that the point of failure was the short barrel all thread separating from the hex nut on the top side of the fixture base, which is installed at the factory." (George C. Strickland, III Report [164-4 at ECF p. 14].)  "The point of failure was obviously the top assembly's hex nut separating from the top assembly's short althread." (Perry E. Doleac Report [164-4 at ECF p. 8].)  "The photographs taken shortly following the incident according to the Pace family shows that the short althread from the top assembly, the coupling, and the threaded stem are all still attached." (Doleac Report [164-4 at ECF p.

sufficient time between April 2, Classic's expert designation deadline, and June 1, the discovery deadline, to submit any supplemental opinions arising from the opinions of Classic's experts.  As opposed to the Supplemental Report being submitted to rebut the deposition opinions of Classic's experts, the Court finds it more plausible that the report was submitted to correct Neal's original Inspection Report, which Neal acknowledged at his deposition should have been changed.  (Neal Depo. [151-8] at 81:15-19.) Supplemental expert reports are not to be used to correct initial reports.  *See Cooper Tire & Rubber Co.*, 2008 WL 5104745, at *4.  Given the insufficiency of Pace's explanation for the untimely Supplemental Report, the fourth factor also weighs in favor of exclusion.

The above-referenced factors, in total, support the exclusion of the Supplemental Report [147-1].  However, for the sake argument and because there does not appear to be a clear record of delay in the prosecution of Pace's crossclaims (and because, as discussed below, the content of the Supplemental Report does not preclude a grant of summary judgment in Classic's favor), the Court will deny Classic's exclusion request. *See Buxton*, 2007 WL 2254492, at *8 (considering a supplemental affidavit in ruling on a motion for summary judgment even though the balance of factors weighed in favor of exclusion).

---

8].)  "[T]he factory installed coupler and top assembly short barrel all thread is shown in the Pace family's pictures to be still attached to the threaded stem that holds the globe . . . ."  (Strickland Report [164-4 at ECF p. 14].)  "[T]he top assembly, from the top of the base and the coupling from the bottom of the base, are attached and secured to the base at the factory. . . .  There was no improper installation by the electrician in my opinion."  (Doleac Report [164-4 at ECF p. 8].)  "[T]here was no improper installation in my opinion. . . .  [T]he coupling assembly was not properly completed by the manufacturer."  (Strickland Report [164-4 at ECF p. 14].)

19

### B.    Whether the Breach and Causation Opinions Stated in Neal's Inspection Report [103-1] Should Be Excluded Under Federal Rule of Evidence 702

#### 1.    Standard of Review

Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the United States Supreme Court held that Rule "702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'"  *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (quoting *Daubert*, 509 U.S. at 589); *accord Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997) ("[W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case.").  In *Kuhmo Tire*, the Supreme Court held that the trial court's "gatekeeping obligation" applies to all expert testimony, and not only to scientific testimony.  526 U.S. at 147.  In order to be reliable, the expert opinion must "'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'"  *Johnson v. Arkema, Inc.*,

20

685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)) (quoting *Daubert*, 509 U.S. at 597).  Rule 702's relevance prong "requires the proponent to demonstrate that the expert's reasoning or methodology can be properly applied to the facts at issue."  *Id.* (citation and internal quotation marks omitted).

Daubert set forth several factors that might "bear on" the trial court's consideration of the admissibility of expert testimony, including, but not limited to:   whether the theory can be tested, whether the theory "has been subjected to peer review and publication", and the "general acceptance" of the theory.  509 U.S. at 593-94.  The Supreme Court later recognized that *Daubert*'s factors "may or may not be pertinent in assessing reliability," since the specific issue, the subject of the expert's testimony and the expert's area of expertise will vary from case to case.  *Kumho Tire*, 526 U.S. at 150.  Nonetheless, "a trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of the expert testimony."  *Id.* at 152.

This Court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.*  However, the Court's role as gatekeeper is not meant to supplant the adversary system since "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596 (citation omitted).  "'The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable.'"  *Johnson*, 685 F.3d at

459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)).  Although the court's focus should be on the expert's principles and methodology, as opposed to the conclusions they generate, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Gen. Elec. Co. v. Joiner*,  522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).  "The relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it."  *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 285 (2010).

### 2.    Analysis

Classic contends that Neal's original opinion that the installer failed to screw the threaded pipe into the coupler properly is inadmissible under Rule 702 because it is based on insufficient and/or erroneous information.  Classic asserts that photographs of the light fixture taken immediately after it fell show the coupler still attached to the threaded pipe.  Further, Neal did not see those photographs before he prepared his Inspection Report [103-1].

Pace contends that whether or not Neal agrees with Classic's experts as to the specific point of failure in the light fixture's various components does not render his original findings erroneous.  According to Pace, "it does not matter which of the three (3) connections came apart" since Neal's opinion is that the installer should have tightly secured all of the connections.  (Pace Memo. in Opp. [160] at p. 14.)  Pace also appears to argue that Neal's initial belief as to the point of separation in the light fixture is supported by the deposition testimony of Robert Brewer.

The Court agrees that any dispute Neal may have with Classic's experts as to

which of the light fixture's connections failed does not render his original opinions erroneous.  The problem for Pace, however, is that Neal's original Inspection Report [103-1] only mentions one specific connection in the subject light fixture that the installer failed to properly secure.  "[I]t is my opinion that the threaded pipe had not been properly screwed into the coupler."  (Inspection Report [103-1] at p. 4.)  This opinion was clearly based on Neal's observation approximately two (2) years after the subject incident that "the coupling was still in the ceiling, but the threaded pipe fell along with the globe . . . ." (Inspection Report [103-1] at p. 2.)  At his deposition, Neal acknowledged that a photograph taken before his inspection showed the coupler still attached to the threaded pipe.  (Neal Depo. [151-8] at 79:14-19.)  In light of this photograph, Neal testified that it was no longer his opinion that the threaded pipe came loose from the coupling (Neal Depo. [151-8] at 78:10-15); that his original opinion as to the point of failure in the light fixture was possibly based on incorrect information (Neal Depo. [151-8] at 79:20-24); and that his original report should have been changed (Neal Depo. [151-8] at 81:15-19). Pace's counsel even stipulated "that the fixture came loose at the coupling instead of the threaded pipe coming loose from the coupling" in light of the photograph.  (Neal Depo. [151-8] at 81:3-12.)  This stipulation was binding on Pace,[8] and it is too late for Pace, her counsel or Neal to go back and again contend that the light fixture might have fallen because the threaded pipe came loose from the coupling.[9]

---

[8] It is well settled under Mississippi law that an attorney has the authority to bind his client to stipulations or admissions of fact.  *See, e.g.*, *Pace v. Fin. Sec. Life of Miss.*, 608 So. 2d 1135, 1138 (Miss. 1992); *Lane v. Woodland Hills Baptist Church*, 285 So. 2d 901, 905 (Miss. 1973).

[9] Pace's reliance on Brewer's deposition testimony in support of Neal's original

"When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict."  *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242, 113 S. Ct. 2578, 125 L. Ed. 2d 168 (1993).  "Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all."  *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996).  Further, "an opinion based totally on incorrect facts will not speak to the case at hand and hence will be irrelevant."  *Id.* (citing *Christopherson v. Allied-Signal Corp.*, 939 F.2d 1106, 1114 (5th Cir. 1991)).  In conjunction with these premises, courts routinely reject expert opinions based on incorrect factual bases.  *See, e.g.*, *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388-89 (5th Cir. 2009) (affirming the district court's exclusion of expert testimony based on a false assumption); *Kemp v. Biolab, Inc.*, 1:04cv478, 2005 WL 1595669, at *7 (S.D. Miss. June 22, 2005) (finding an expert's opinion to be "unreliable because there are simply no facts to support it"); *Davis v. Ashcroft*, No. 01-331, 2003 WL 25665777, at *1 (D.D.C. Aug. 19, 2003) (excluding expert testimony based on incorrect data).

The photograph showing parts of the light fixture that fell from Pace's ceiling, along with the deposition testimony of Pace, Pace's son, and Neal, and the stipulation of Pace's counsel at Neal's deposition, establish that the coupler was still attached to the threaded

---

opinion is misplaced.  Brewer's deposition took place months before Pace's counsel's stipulation.  Thus, Pace cannot contend that any new, previously unavailable information was disclosed at Brewer's deposition which could possibly negate the effect of the stipulation.  Furthermore, Brewer's deposition testimony could be reasonably construed to mean that he unscrewed and replaced the threaded pipe and coupler together as one unit in changing out the light fixture from Pace's closet to her bathroom.

pipe after the fixture fell.  Neal's original breach and causation opinions were based on a different, incorrect assumption:  that the coupler remained in the ceiling after the light fixture fell.  (Inspection Report [103-1] at p. 2.)  Neal's original opinions are "unreliable" and "irrelevant" (and thus inadmissible under Rule 702), since they were based on this erroneous assumption.  *Guillory*, 95 F.3d at 1331.  Pace has fallen far short of proving by a preponderance of the evidence that Neal's original breach and causation opinions are reliable, and this Court will not set a precedent by accepting an opinion in an expert's report that the expert later abandoned at deposition and acknowledged "should have [been] changed".  (Neal Depo. [151-8] at 81:15-19).

### C. Conclusion

Brewer and Classic's Motion *in Limine* [151] is denied to the extent it seeks the exclusion of James R. Neal's opinions expressed at his deposition and in his Supplemental Report [147-1] on the basis of untimeliness.  The Motion *in Limine* is granted under Rule 702 to the extent it seeks the exclusion of Neal's original opinion that the light fixture fell because the threaded pipe was not properly screwed into the coupler.

### II. Martha Pace's Motion to Strike Supplement [169]

Pace contends that Classic's Supplement [164] to Motion for Summary Judgment and Rebuttal Memorandum [165] improperly raise new arguments and facts in support of summary judgment well past the motion deadline.  The arguments in Classic's Rebuttal Memorandum [165] which could be considered new are in response to Pace's invocation of the doctrine of *res ipsa loquitur* in opposition to summary judgment.  The pleadings

setting forth Pace's crossclaims[10] do not explicitly or implicitly invoke this doctrine. Classic was entitled to address Pace's reliance on *res ipsa loquitur* in its Rebuttal Memorandum [165] since it does not appear that Pace raised this issue until she filed her Response [161] to the Motion for Summary Judgment.

Classic's Supplement [164] presents exhibits, such as excerpts from Brewer's deposition and Defendants' Designation of Experts, in further support of summary judgment.  Classic's Rebuttal Memorandum [165] references the exhibits in addressing Pace's reliance on *res ipsa loquitur*.  Pace does not contend that Classic failed to produce the materials attached as exhibits to the Supplement prior to the discovery deadline. Classic was also entitled to rely on documents disclosed during discovery in addressing Pace's invocation of the doctrine of *res ipsa loquitur* in opposition to summary judgment.

For the preceding reasons, Martha Pace's Motion to Strike Supplement [169] is not well taken and is denied.

### III.    Classic's Motion for Summary Judgment on Crossclaims [149]

#### A.    Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted), *cert. denied*, 131 S. Ct. 2972 (2011).  The nonmovant

---

[10] (*See* Answer [6]; Third Party Complaint [54].)

"must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "'An issue is material if its resolution could affect the outcome of the action.'" *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). Summary judgment is mandatory "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2103 (2012) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

### B.   Analysis

Classic argues that summary judgment is appropriate because James R. Neal's opinions are the only evidence Pace has offered on the negligence elements of breach and causation and, pursuant to the Motion *in Limine* [151], Pace should not be allowed to

27

utilize Neal's opinions in support of her claims.  As detailed above, the Court has

determined that Neal's breach and causation opinions stated in his Inspection Report

[103-1] should be excluded under Federal Rule of Evidence 702.  Thus, the Court will not

credit Pace with those opinions in considering the Motion for Summary Judgment.

Although Classic moved to exclude Neal's breach and causation opinions stated in his

deposition testimony and Supplemental Report [147-1] on the basis of untimeliness as

opposed to Rule 702, the Court will consider the reliability of those opinions in its

summary judgment analysis given its gatekeeping obligation under *Daubert*.  "The ability

of a district court to evaluate expert testimony *sua sponte* and exclude such testimony

where appropriate has been recognized by several courts."  *Brenord v. Catholic Med. Ctr.*,

133 F. Supp. 2d 179, 188 n.4 (E.D.N.Y. 2001) (citing *Kirstein v. Parks Corp.*, 159 F.3d

1065, 1067 (7th Cir. 1998)) ("we have not required that the *Daubert* inquiry take any

specific form and have, in fact, upheld a judge's *sua sponte* consideration on the

admissibility of expert testimony) (other citations omitted); s*ee also Miller v. Baker

Implement Co.*, 439 F.3d 407, 413 (8th Cir. 2006) (concluding that the district court "did

not abuse its discretion by undertaking a sua sponte *Daubert* analysis" where the parties

had addressed *Daubert* in earlier filings and the expert's report was before the district

court).[11]

### 1.   Negligence

Pace alleges that Brewer and/or Classic "negligently and improperly installed" the

_____

[11] Classic's Motion *in Limine* [151] addresses *Daubert*, and Neal's breach and
causation opinions stated in his deposition testimony [151-8, 159-4] and Supplemental
Report [147-1] are in the record.

subject light fixture.  (*See* Answer [6] at p. 9; Third Party Complaint [54] at ¶ 7.)  "A

negligence claim has four elements:  duty, breach of duty, causation, and damages."

*Ladner v. Holleman*, 90 So. 3d 655, 659 (¶ 13) (Miss. Ct. App. 2012) (citing *Price v. Park*

*Mgmt., Inc.*, 831 So. 2d 550, 551 (¶ 5) (Miss. Ct. App. 2002) (citing *Carpenter v. Nobile*,

620 So. 2d 961, 964 (Miss. 1993)).  Classic does not contend that Pace lacks evidence to

show that Brewer and/or Classic owed a duty to install the light fixture properly.  Thus, a

jury issue exists as to the first essential element of Pace's negligence claim.[12]

Classic contends that without Neal's testimony, Pace "has produced no evidence

whatsoever to support the essential elements of breach or causation."  (*See* Classic's

Memorandum Brief [150] at p. 4.)  In response, Pace argues "that in addition to the expert

testimony of Mr. Neal on the causation issue, the doctrine of *res ipsa loquitur* would

apply."  (*See* Pace Memo. In Opp. to SJ [162] at p. 2.)  *Res ipsa loquitur* "is simply one

form of *circumstantial* evidence" that allows negligence to be inferred in certain factual

settings.  *Gray v. BellSouth Telecomms., Inc.*, 11 So. 3d 1269, 1272 (¶ 11) (Miss. Ct. App.

2009) (emphasis added and citations omitted).  In raising the *res ipsa loquitur* doctrine,

Pace has essentially conceded that outside of Neal's testimony, no *direct* evidence exists

to support the breach and causation elements of her negligence claim.  Thus, the Court

must examine Neal's opinions which have not been previously excluded to determine if

they create a fact issue precluding a grant of summary judgment.  Pace's *res ipsa loquitur*

---

[12] Classic has also not requested summary judgment on the basis of an independent contractor defense.  In fact, Classic and Brewer assume *arguendo* for the purposes of summary judgment "that one of them installed the light fixture."  (*See* Rebuttal Memorandum [165] at p. 6 n.3.)  Therefore, the Court will not determine whether as a matter of law the light fixture was installed by an independent contractor or employee of Classic.

argument will be addressed in a subsection section of this opinion.

At deposition, Neal offered the following testimony which, broadly construed, could

be said to touch upon the issues of breach and causation:

> A.   It was - - when I got this, of course, it had to come - - it had to come from
>      there, you know.  It wasn't nothing else there, you know.  Okay.  But
>      regardless of how it came apart, it wasn't put up right.
>
> Q.   But why do you say that?
>
> A.   Because it came apart.  It fell.

(Neal Depo. [151-8] at 78:22-79:3.)  Along similar lines, Neal's Supplemental

Report offers the following:

> Regardless of whether the light fixture in the Pace home came
> apart where the long threaded pipe screws into the coupler as
> I originally thought, or whether the coupler came loose from
> the short threaded pipe, or whether the short threaded pipe
> came loose from the hex nut, my opinion is the same, that the
> installer should have double checked all of those connections
> and made sure they were tight and secure prior to fastening
> the fixture to the ceiling.  The installer's failure to make sure
> all of those connections were secure is the reason the subject
> light fixture fell from the ceiling and hit Mrs. Pace on the head,
> and that failure is a violation of the standard of care expected
> of a reasonably prudent electrician and light installer.

(Supplemental Report [147-1] at pp. 2-3.)  Several authorities are instructive in

determining whether these opinions preclude a grant of summary judgment in Classic's

favor.  *See Brown v. Parker-Hannifan Corp.*, 919 F.2d 308 (5th Cir. 1990); *Buxton*, 2007

WL 2254492; *Rudd v. Montgomery Elevator Co.*, 618 So. 2d 68 (Miss. 1993); *Rogers v.*

*Barlow Eddy Jenkins P.A.*, 22 So. 3d 1219 (Miss. Ct. App. 2009).

In *Brown*, the plaintiff brought suit after sustaining injuries while pressure testing oil

field equipment.  919 F.2d at 309.  Plaintiff alleged that his injuries were caused either by

a defect in a quick release coupling manufactured by the defendant, or by the defendant's failure to label the coupling's pressure rating. *Id.* The district court excluded the testimony of plaintiff's expert on the basis "that it was speculative and of no assistance to the trier of fact" and then granted defendant's motion for a directed verdict. *Id.* at 310-11. On appeal, the Fifth Circuit provided that the failure of the coupling, by itself, did not result in liability. "Sooner or later, all mechanical parts wear out and fail. To recover from . . . [the defendant, plaintiff] had to show not only that the coupling failed but also that a defect in the coupling, or the failure to label the coupling with its pressure rating, caused the failure." *Id.* at 310. The Fifth Circuit found that the trial court properly excluded the testimony of Plaintiff's expert because he admitted at deposition that "corrosion, abuse, or normal wear and tear could have caused the [coupling's] failure" and this explained the failure just as well as the expert's negligence theories. *Id.* at 312. "Without some basis to establish that one of . . . [the expert's] theories is the most likely cause of the failure on this occasion, his testimony amounts to speculation and is of no assistance to the jury." *Id.* The district court's decision to grant a directed verdict was affirmed. *Id.*

In *Buxton*, plaintiff filed a products liability action alleging that her daughter suffered a heart attack and stroke as a result of using an over-the-counter cough suppressant. 2007 WL 2254492, at *1. One of plaintiff's experts, Dr. Ramsey, submitted three affidavits during the course of proceedings. *Id.* at *3-4. Defendants moved for summary judgment and the plaintiff had to "produce admissible expert testimony that she had a stroke" in order to defeat the motion. *Id.* at *9. Defendants argued that Dr. Ramsey's opinion that plaintiff suffered a stroke was "conclusory *ipse dixit*, unsupported by any objective evidence in plaintiff's medical records, in contradiction to the opinions

31

and testimony of both of her treating physicians, and not scientifically valid or reliable . . . ." *Id.* at *10.  The Court agreed.  Dr. Ramsey did not identify any medical records that supported his theory and no other physician opined that plaintiff's brain injury resulted from a stroke.  *Id.* at *12.  Further, Dr. Ramsey did not attempt to rule out cardiac arrest as the cause of injury in his first two affidavits and his changing opinion as to what exactly happened to the plaintiff over the course of his three affidavits underscored a lack of reliability.  *Id.* at *13-14.  The Court thus excluded Dr. Ramsey's opinions under Rule 702 and granted summary judgment in favor of defendants.  *Id.* at *14.

The plaintiff in *Rudd* alleged personal injuries arising from an elevator malfunction. 618 So. 2d at 69.  The trial court granted defendant's motion for a judgment notwithstanding the verdict, finding that Plaintiff's proposed elevator expert did not qualify as an expert under Mississippi Rule of Evidence 701 or 702.  *Id.* at 72.  The sole issue before the Mississippi Supreme Court was "whether there was sufficient evidence presented to make a jury issue that Montgomery negligently failed to properly inspect and maintain the elevator which caused it to malfunction . . . ."  *Id.*  The court provided the following in considering the issue:

> All things mechanical are subject to breakdown upon occasion even with the best maintenance.  To make a jury issue on liability in this case, it was incumbent upon Rudd to establish by competent evidence that Montgomery was somehow negligent in its maintenance and repair of the elevator and that this negligence caused it to malfunction that day.

*Id.*  The testimony of Plaintiff's expert, that the elevator malfunction was caused by a misaligned roller which should have been obvious to the defendant's service mechanic, was based on speculation and conjecture and failed to create a jury issue.  *Id.* at 72-73.  Plaintiff's expert did not inspect the elevator until a year and a half following the accident,

32

and the defendant's service mechanic testified that he found the elevator rollers properly
aligned on the date of the accident. *Id.* Although the service mechanic found a
misalignment the day following the accident, only "pure speculation" supported the
contention that the mechanic "somehow missed this the previous day." *Id.* at 73. Further,
the elevator operated "smoothly without mishap for at least another eighteen to twenty
hours." *Id.* Not only was Plaintiff's expert's testimony regarding the existence of the
misalignment pure speculation, "even more speculative is that somehow it would not have
occurred with even the best of maintenance." *Id.* The defendant's dismissal was affirmed.
*Id.*

   *Rogers* was a wrongful death action brought by the widow of Robert Gary Rogers.
22 So. 3d at 1220 (¶ 1). Rogers died after falling off a wall-mounted ladder at the Hinds
County Youth Detention Center (the "Center"). *Id.* Plaintiff alleged that the Center's
architects were negligent because they were responsible for the ladder's design,
construction and placement, and the wall-mounted ladder did not meet the Occupational
Safety and Health Administration's ("OSHA") specified dimensions. *Id.* at 1221 (¶ 5).
Plaintiff offered the testimony of two expert witnesses, Dr. Hall and Dr. Shenefelt, to
establish that the design and installation of the ladder caused Rogers' fall. *Id.* at 1223 (¶
14). The trial court found plaintiffs' experts' opinions to be insufficient and granted
summary judgment in favor of defendants. *Id.* at 1222 (¶ 8). The Mississippi Court of
Appeals affirmed. *Id.* at 1220 (¶ 1). The court found Dr. Hall and Dr. Shenefelt's opinions
to constitute "a mere guess, speculation, or conjecture on their part." *Id.* at 1223 (¶ 14).
Dr. Hall testified that the ladder's condition more likely than not contributed to Rogers's fall,
but he could not rule out "other things," such as Rogers's health, that might have caused

him to fall.  *Id.* at 1223-24 (¶¶ 15-16).  Dr. Shenefelt similarly testified that circumstances

other than the ladder's design, such as Rogers possibly suffering a stroke, could have

caused him to fall.  *Id.* at 1224 (¶ 17).  Dr. Shenefelt felt that "cause and effect" were

established by the fact that the ladder did not meet OSHA's design dimensions and since

Rogers fell from the ladder.  *Id.* at 1224 (¶ 18).  The court held that without Dr. Hall and

Dr. Shenefelt's "conclusory statements and speculation, there is no way to make the leap

from the failure to meet OSHA's ladder dimensions to the proximate cause of Rogers's

fall."  *Id.* at 1225-26 (¶ 24).

James R. Neal's opinions are similar in many aspects to the expert testimony at

issue in *Brown*, *Buxton*, *Rudd* and *Rogers*.  Analogous to the expert opinions in *Brown*

and *Rogers*, Neal has provided that circumstances other than the alleged negligence of

the light installer could have caused the light fixture to fall.  (*See* Inspection Report [103-1]

at p. 5.) ("[A]bsent an earthquake or tornado or *similar event*[13] the pipe is not going to turn

enough to come loose from the coupler even if it is only hand tightened as long as it meets

the '4 thread rule' which means 4 turns.") (emphasis added).  Also like Dr. Shenefelt in

*Rogers*, Mr. Neal presumes "cause and effect" as to breach and causation.

> Q.    But why do you say . . . [regardless of how it came apart, it wasn't put up right]?
>
> A.    Because it came apart.  It fell.

(Neal Depo. [151-8] at 78:25-79:3.)

---

[13] The Court takes judicial notice of the fact that Hurricane Katrina significantly affected the Hattiesburg area shortly before Pace purchased the subject residence in Lamar County, Mississippi on September 2, 2005.  (*See* Pace Memo. in Opp. to SJ [162] at p. 1.)

Similar to Dr. Ramsey in *Buxton*, Neal's shifting opinions "as to what exactly happened to" the light fixture underscore a lack of reliability.  2007 WL 2254492, at *14. "It is obvious from the pieces of the light fixture in the box, that the part of the light fixture that fell did so because the threaded pipe came loose from the coupling."  (*See* Inspection Report [103-1] at p. 2.)

> Q.   My only question right now is whether or not that sentence that you just read on page 2, the first sentence of the last paragraph of your opinion expressed on March 1st, 2012, is that still your opinion?
>
> A.   No.

(Neal Depo. [151-8] at 78:10-15.)  "[T]he hex nut that came apart, the thing that was loose that you got to make sure is tight before you put anything in it, had fell, not what she had gave me."  (Neal Depo. [151-8] at 79:10-13.)  "The coupling came loose."  (Neal Depo. [151-8] at 82:14-15.)  "Regardless of whether the light fixture in the Pace home came apart where the long threaded pipe screws into the coupler as I originally thought, or whether the coupler came loose from the short threaded pipe, or whether the short threaded pipe came loose from the hex nut, my opinion is the same . . . ."  (Supplemental Report [147-1] at pp. 2-3.)

Furthermore, Neal's breach and causation opinions stated in his deposition testimony and Supplemental Report are based "on the *ipse dixit* of the expert[,]" as opposed to objective evidence.  *Buxton*, 2007 WL 2254492, at *10 (citation omitted). Neal's first breach/causation opinion was that the light fixture fell because the threaded pipe was not properly screwed into the coupler.  This was based on Neal's findings that there was no defect in the connection between the coupler and pipe and that there were no wrench marks on the pipe to show that it had been wrench tightened to the coupler.

35

(*See* Inspection Report [103-1] at p. 3.)  But for the fact that the threaded pipe did not separate from the coupler, (*see* Neal Depo. [151-8] at p. 81), Neal's initial breach/causation opinion would appear to be supported by objective evidence. Conversely, Neal's subsequent breach/causation opinions seem to be supported only by speculation and guesswork.  For instance, neither Neal's deposition testimony nor Supplemental Report indicates that he was able to rule out any manufacturing defects where the coupler connects to the short threaded pipe or where the short threaded pipe connects to the hex nut.  Moreover, Neal testified that he did not know if the connection between the coupler and light fixture was made at the factory or by the light installer. (Neal Depo. [151-8] at 82:13-25.)  It is also not clear if Neal even examined the coupler attached to the light fixture at the time of the incident or a coupler from the replacement fixture that Robert Brewer installed after the incident.  (*See* Inspection Report [103-1] at p. 2.)  Ultimately, Neal's belief that the light fixture was improperly installed appears to be based solely on the fact that "it came apart.  It fell."  (Neal Depo. [151-8] at 78:22-79:3.)

Neal's inspection of various light fixture components approximately two (2) years after the fixture fell, (*see* Inspection Report [103-1] at p. 1.), and the fact that the light fixture remained in place for more than four (4) years before it fell also highlight the speculative nature of his opinions.  *See Rudd*, 618 So. 2d at 73 (expert inspected the elevator a year and a half following the incident and the elevator operated "without mishap for at least another eighteen to twenty hours"); *see also Dorsey v. Simon Prop. Group, L.P.*, No. 3:08cv398, 2009 WL 1976526, at *3 (S.D. Miss. July 7, 2009) (finding relevant that an escalator worked properly for eight days in holding "there is nothing but speculation as to the cause of" a fall from the escalator), *aff'd*, 378 Fed. Appx. 476 (5th

36

Cir. 2010).  Given that "[a]ll things mechanical are subject to breakdown upon occasion even with the best of maintenance", it was incumbent upon Pace "to offer something beyond pure speculation that there was negligence" which caused the light fixture to fail. *Rudd*, 618 So. 2d at 72, 73.  Neal's breach and causation opinions simply fail to rise above the speculative level and do not create an issue of fact precluding summary judgment.  *See Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) ("Testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion because 'there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11, 91 L. Ed. 2d 202 (1986)).

### 2.    Negligent Hiring and Supervision

Pace contends that Classic "negligently and improperly screened, trained and supervised the employees and/or sub-contractors on the job and that said negligence was a direct and proximate cause of the Third Party Plaintiff's damages complained of herein."  (Third Party Complaint [54] at ¶ 8).  Pace further alleges that Classic "negligently failed to properly inspect the work of the employees and/or sub-contractors on the subject job site . . . ."  (Third Party Complaint [54] at ¶ 8).  The Court finds that these allegations fit under the theories of negligent hiring and negligent supervision.  A "claim of negligent hiring, retention and supervision . . . is simply a negligence claim, requiring a finding of duty, breach of duty, causation and damage."  *Roman Catholic Diocese of Jackson v. Morrison*, 905 So. 2d 1213, 1229 (¶ 45) (Miss. 2005).

In Mississippi, a "plaintiff must prove the defendant had either actual or

constructive knowledge of an employee's incompetence or unfitness before the employer will become liable for the negligent hiring or retention of an employee who injures a third party." *Doe v. Pontotoc County Sch. Dist.*, 957 So. 2d 410, 417 (¶ 16) (Miss. Ct. App. 2007) (citing *Eagle Motor Lines v. Mitchell*, 223 Miss. 398, 78 So. 2d 482, 487 (Miss. 1955)).  Pace presents no evidence to show that Brewer or Classic knew or should have known that the individual that installed the light fixture was unfit or incompetent.  Instead, Pace asserts, without citation to any supporting documentation, that "Classic and Brewer hired an inexperienced electrician who was not licensed . . . ."  (Pace Memo. in Opp. to SJ [162] at p. 5.)  "To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda." *Roberts v. Walthall County General Hosp.*, 96 F. Supp. 2d 559, 561 (S.D. Miss. 2000), *aff'd*, 240 F.3d 1075 (5th Cir. 2000).  Pace's failure to present factual evidence in support of her negligent hiring claim dictates that there is no genuine issue for trial.

Pace's negligent supervision (or inspection) allegation also fails due to the absence of supporting evidence.  Nowhere does Pace "come forward with specific facts showing" Classic's duty and the standard of care as to the supervision of employees or independent contractors on a residential job site. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d at 812.  Much less does Pace establish for purposes of summary judgment that Classic breached the applicable standard of care. *Cf. Estate of Guillotte v. Delta Health Group, Inc.*, 5 So. 3d 393, 410 (¶ 43), 411 (¶ 46) (Miss. 2009) (affirming grant of summary judgment on corporate negligence claim where no evidence was presented regarding the defendants' duty as to "supervision of staff" or "breach of the standard of care").  What

Pace does is essentially argue that Classic and Brewer failed to supervise the light installer properly "as shown by the fact that light fixture he installed fell from the ceiling for no apparent reason."  (Pace Memo. in Opp. to SJ [162] at p. 5.)[14]  This conclusory, speculative allegation cannot defeat Classic's Motion for Summary Judgment.  *See Sanchez v. Carollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) ("Conclusional allegations and denials, speculation, and unsupported assertions are insufficient to avoid summary judgment.") (citation omitted).

### 3.   *Res Ipsa Loquitur*

"Res ipsa loquitur is not, like negligence and strict liability, a theory of recovery." *Rogers v. Elk River Safety Belt Co.*, No. 1:95cv115, 1996 WL 671316, at *4 (N.D. Miss. Sept. 20, 1996).  Instead, the doctrine is one form of circumstantial evidence that allows negligence to be inferred in certain situations.  *Gray*, 11 So. 3d at 1272 (¶ 11).  *Res ipsa loquitur* has three elements:

1.  The instrumentality causing the damage must be under the exclusive control of the defendant.

2.  The occurrence must be such as in the ordinary course of things would not happen if those in control of the instrumentality used proper care.

3.  The occurrence must not be due to any voluntary act on the part of the plaintiff.

*Redhead v. Entergy Miss., Inc.*, 828 So. 2d 801, 814 (¶ 43) (Miss. Ct. App. 2001) (citing

---

[14] Pace also alleges that her negligent supervision claim is supported by Robert Brewer's deposition testimony "that he did not know of anything that caused the subject light fixture to fall other than improper installation . . . ."  (Pace Memo. in Opp. to SJ [162] at pp. 4-5). This is not an accurate representation of Brewer's deposition testimony.  In response to the question of whether Brewer knew what caused the light fixture to fall other than improper installation, Brewer stated:  "Well, I'm not an engineer, and I don't know, you know, what might or might not have caused it to fall."  (Brewer Depo. [159-2] at 72:17-73:4.)  Brewer's actual testimony raises no inference of negligence.

*Read v. S. Pine Elec. Power Assoc.*, 515 So. 2d 916, 919-20 (Miss. 1987)).  "If there is enough evidence to make a jury question on each of these elements, a jury may infer negligence, and a plaintiff is entitled to an instruction to that effect."  *Id.*  The doctrine "'should be strictly limited and cautiously applied.'"  *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 287 (5th Cir. 1975) (quoting *Clark v. Vardaman Manuf. Co.*, 249 Miss. 42, 162 So. 2d 857, 858 (Miss. 1964)).

        The Court finds that sufficient facts exist to create a jury issue as to the first and third elements of *res ipsa loquitur*, but not the second.  Classic contends that the first element fails because neither it nor Brewer "had 'exclusive control' over the light fixture at issue in this case during the time after the house was sold to the Paces, which was more than *four years* prior to Cross-Plaintiff's injury."  (Rebuttal Memorandum [165] at p. 3.)  This argument overlooks the meaning of "exclusive control" under Mississippi law: the defendant "is only required to have control of the instrumentality at the time of the *negligent* act which gives rise to the injury and not necessarily at the time of the accident to the plaintiff."  *Johnson v. Coca-Cola Bottling Co.*, 239 Miss. 759, 125 So. 2d 537, 539 (Miss. 1960).  The alleged negligent act in this case was the improper installation of the subject light fixture and Classic has admitted for purposes of summary judgment that it installed the fixture.  (*See* Rebuttal Memorandum [165] at p. 6 n.3.)  Further, Pace testified at deposition that neither she nor any member of her household changed out the light bulb or did anything to the fixture prior to the subject incident.  (Pace Depo. [159-1] at 82:5-13, 103:21-104:16.) Classic's argument that portions of Brewer's deposition testimony show that someone changed the light bulb in the fixture before it fell does not support a grant of summary judgment.  At best for Classic, Brewer's testimony raises a

40

fact issue for the jury to decide.

With respect to the second element of *res ipsa loquitur*, the Mississippi Supreme Court has provided "that the doctrine does not apply when, upon the whole case, there has been specific proof which discloses some reasonable explanation for the happening other than the negligence charged against the defendant." *Winters v. Wright*, 869 So. 2d 357, 364 (¶ 15) (Miss. 2003) (citing *Yazoo & M.V.R. Co. v. Skaggs*, 181 Miss. 150, 179 So. 274, 277 (1938)).  The plaintiff is required to present "'evidence from which reasonable men can say on the whole it is more likely that there was negligence associated with the cause of the event than that there was not.'"  *Read*, 515 So. 2d at 920 (quoting Prosser, *Law of Torts* § 39 (1971)).  The "doctrine [is] inapplicable where inference that damage was due to another cause is equally reasonable as inference that defendant's negligence was the cause."  *Id.* (citing *Kincade v. Doll*, 472 So. 2d 60 (La. Ct. App. 1985)).

The Court concludes that circumstances other than Classic's alleged negligent installation of the light fixture were just as likely to have caused the light fixture to fall.  One of Classic's expert witnesses, Perry Doleac, opined "that the installation process had nothing to do with the light fixture globe assembly falling . . . ."  (Doleac Report [164-4 at ECF p. 8].)  "[W]ithin a reasonable degree of certainty, . . . there was a manufacturing assembly defect or human intervention subsequent to installation."  (Doleac Report [164-4 at ECF p. 8].)  Another of Classic's experts, George Strickland, stated "that the installation process had nothing to do with the light fixture globe assembly falling" and "that the coupling assembly was not properly completed by the manufacturer." (Strickland Report [164-4 at ECF p. 14].)  Even Plaintiff's expert, James Neal,

acknowledged that "an earthquake or tornado or *similar event*"[15] could cause a light fixture that was secured pursuant to the "4 thread rule" to fall.  (Inspection Report [103-1] at p. 5) (emphasis added).  Courts often find the "ordinary course of things" element of *res ipsa loquitur* not met where experts determine that injuries could have resulted from causes other than defendants' negligence.  *See, e.g.*, *Dorsey*, 2009 WL 1976526, at *5; *Brown v. Baptist Mem. Hosp.-DeSoto, Inc.*, 806 So. 2d 1131, 1135 (¶ 18) (Miss. 2002); *Powell v. Methodist Health Care-Jackson Hosps.*, 856 So. 2d 353, 359 (¶ 20) (Miss. Ct. App. 2003), *aff'd*, 876 So. 2d 347 (Miss. 2004).

Simple mechanical failure in some part of the light fixture assembly could also explain why the light fixture fell.  "All things mechanical are subject to breakdown upon occasion even with the best maintenance."  *Rudd*, 618 So. 2d at 72; *see also Brown*,  919 F.2d at 310 ("Sooner or later, all mechanical parts wear out and fail.").  Since mechanical failure can occur without anyone's fault or negligence, this potential cause also weighs against the applicability of *res ipsa loquitur*.  *Cf. Gooden v. Horn*, No. 4:07cv72, 2009 WL 230038, at *2 (N.D. Miss. Jan. 29, 2009) (refusing to apply *res ipsa loquitur* where there were "reasonable explanations of how the plaintiff's son could have been struck by the truck operated by . . . [Western Express's employee] that do not absolutely require

---

[15] The Court again takes judicial notice of the fact that Hurricane Katrina significantly affected the Hattiesburg area just before Pace purchased the subject residence in Lamar County, Mississippi on September 2, 2005.  (*See* Pace Memo. in Opp. to SJ [162] at p. 1.)  The Court acknowledges that the likelihood of Hurricane Katrina causing the light fixture to fall more than four years later is highly questionable; but, so is Pace's improper installation allegation since even more time passed between installation and the light fixture falling in February of 2010.

negligence on the part of Western Express"); *Redhead*, 828 So. 2d at 814 (¶ 44) (affirming the trial court's refusal to apply the doctrine since "a fire could happen regardless of whether" the defendant used proper care).  Given that the doctrine of *res ipsa loquitur* "should be cautiously applied" and that Pace's "accident could have happened without Defendants' negligence, res ipsa loquitur does not apply" in this action. *Dorsey*, 2009 WL 197626, at *4, 5.

"It is the universal rule in tort actions that mere proof of injury complained of raises no presumption of negligence."  *Smith v. United States*, 284 F. Supp. 259, 261 (S.D. Miss. 1967), *aff'd*, 394 F.2d 482 (5th Cir. 1968) (citing *Waddle v. Sutherland*, 156 Miss. 540, 126 So. 201 (Miss. 1930)).  In this case, proof that a light fixture fell from the ceiling of Pace's residence raises no presumption that Classic or Brewer improperly installed the fixture.  Pace was required to come forward with specific facts, as opposed to conjecture and speculation, showing a genuine issue for trial as to each element of her negligence claim.  Pace failed to meet her burden and Classic and Brewer are entitled to summary judgment as a matter of law.

## IV.    Pace's Motion to Strike AIC's Rebuttal [168] and AIC's Motion for Declaration [148]

These Motions are denied as moot given the determination that Classic and Brewer are entitled to summary judgment on Pace's crossclaims.[16]

## **CONCLUSION**

For the foregoing reasons,

---

[16] It is also unnecessary to address Brewer's contention that he is not a proper party to this action under the Mississippi Limited Liability Company Act, given the Court's ruling on summary judgment.

IT IS ORDERED AND ADJUDGED that Classic and Brewer's Motion *in Limine* [151] is granted in part and denied in part.  The breach and causation opinions expressed by James R. Neal at his deposition and in his Supplemental Report [147-1] are not excluded based upon untimeliness.  James R. Neal's initial opinion that the light fixture fell because the threaded pipe was not properly screwed into the coupler is excluded under Federal Rule of Evidence 702.

IT IS FURTHER ORDERED AND ADJUDGED that Martha Pace's Motion to Strike Supplement [169] is denied.

IT IS FURTHER ORDERED AND ADJUDGED that Brewer and Classic's Motion for Summary Judgment on Crossclaims [149] is granted and Pace's crossclaims against Brewer and Classic are dismissed with prejudice.

IT IS FURTHER ORDERED AND ADJUDGED that Martha Pace's Motion to Strike AIC's Rebuttal [168] is denied as moot.

IT IS FURTHER ORDERED AND ADJUDGED that AIC's Motion for Declaration [148] is denied as moot.

IT IS FURTHER ORDERED AND ADJUDGED that the trial setting on Martha Pace's underlying liability claim is terminated and that the parties are to advise the Court in writing within twenty-one (21) days of the entry of this Order of their respective positions as to whether new case management deadlines and a trial date are necessary for the resolution of the insurance coverage claims.

SO ORDERED AND ADJUDGED this the 7th day of September, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE